1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   EDWARD MURDOCK,                          CASE NO. CV F 09-0547 LJO SMS

12                    Plaintiff,              **SUMMARY JUDGMENT DECISION**
                                              (Doc. 21.**)**
13            vs.

14   COUNTY OF FRESNO,

15                    Defendant.
     _____/

16

17                            **INTRODUCTION**

18            Defendant County of Fresno ("County") seeks summary judgment on plaintiff Edward Murdock

19   ("Mr. Murdock's") employment discrimination, harassment and retaliation claims arising from his

20   employment as a legal assistant with the County's Public Defender's Office ("PDO") on grounds that

21   Mr. Murdock's claims are time barred and lack supporting facts.  Mr. Murdock responds that the

22   evidence reveals that he was subjected to race discrimination, harassment and retaliation.  This Court

23   considered the County's  summary judgment motion on the record[1] without a hearing, pursuant to Local

24   _____

25        [1]       This Court carefully reviewed and considered all evidence, arguments, points and authorities, declarations,
     testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission
26   of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did
     not consider the evidence, argument, document, objection or paper.  This Court thoroughly reviewed, considered and applied
27   the evidence it deemed admissible, material and appropriate for summary judgment.  This Court does not rule on objections
     in a summary judgment context, unless otherwise noted.
28

                                              1

Rule 230(g).  For the reasons discussed below, this Court GRANTS the County summary judgment.

## BACKGROUND

### Mr. Murdock's PDO Employment

Mr. Murdock is black, was hired by the PDO as a Legal Assistant I in 2000, and worked under the supervision of four Public Defenders until 2009, when Mr. Mr. Murdock became employed with the County's Social Services Department after a reduction in force.  Mr. Murdock became a permanent PDO employee on December 11, 2001.  As a PDO legal assistant, Mr. Murdock's job duties included interviewing witnesses, experts, PDO clients, and applicants in child support cases, summarizing police reports and other documents, preparing subpoenas and files for an assigned courtroom and attorney, and similar tasks.

### Mr. Murdock's Discrimination, Retaliation And Harassment Claims

County Personnel Rules provide for a discrimination complaint procedure by which employees notify management of violations of anti-discrimination policies.  The County notes that Mr. Murdock did not use the County's written complaint procedure to notify the County of "alleged unlawful conduct" based on Mr. Murdock's race.  The County claims its first notice of Mr. Murdock's claim of "racially-motivated conduct" was his March 25, 2008 Charge of Discrimination ("DFEH charge") filed with the California Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC").

The DFEH charge claims race discrimination and states:

I.    On or about November 2000, I was hired as a Legal Assistant I.  I have since been treated differently because of my race.  I have made several requests to Jim Dockery for performance evaluations and other items.

II.   Jim Dockery (Caucasian), Supervisor, has not provided me a response to my requests.

III.  I believe I have been subjected to different terms and conditions of my employment because of my race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended.

DFEH issued Mr. Murdock a March 26, 2008 right-to-sue letter.

Pointing to Mr. Murdock's interrogatory response, the County notes that Mr. Murdock claims "adverse employment action" based on race or color in that:

2

1.   In 2002, Mr. Murdock's co-workers Stacy Ruble ("Ms. Ruble") and Ed Garza ("Mr. Garza") "hit" Mr. Murdock;

2.   In 2003, Mr. Murdock was notified of layoff which was rescinded;

3.   In 2004 and 2006, Mr. Murdock tested successfully for the Defense Investigator position but was not interviewed;

4.   In 2005, Mr. Murdock was not promoted to Legal Assistant II;

5.   In 2005, Mr. Murdock was not hired as an Office Assistant Supervisor; and

6.   Mr. Murdock received negative evaluations which were not consistently given annually.

The County further notes that Mr. Murdock claims that in 2001 and 2002, coworkers harassed him by referring to him as "O.J. Simpson" in connection with Mr. Murdock's domestic violence charge.

**Coworker Hitting**

In late 2002, Mr. Murdock complained to PDO Senior Defense Attorney Elizabeth Diaz ("Ms. Diaz") and then Assistant Public Defender George Cajiga ("Mr. Cajiga") that Ms. Ruble, a then senior PDO paralegal, "popped me on the back of my head" when Mr. Murdock talked with an inmate in the County's "new jail area." In his deposition, Mr. Murdock attributed Ms. Ruble to "just trying to show off or whatever because she . . . was the senior paralegal at the office." In his summary judgment opposition papers, Mr. Murdock claims Ms. Ruble's contact was offensive and disrespectful. Mr. Murdock attributes Mr. Cajiga to have told Mr. Murdock that Mr Murdock "needed to learn to take a joke" and "made fun" of Mr. Murdock for complaining about Ms. Ruble's contact.

Mr. Murdock points to a "second incident" on an unidentified date during which Ms. Ruble "jokingly" hit him in the shoulder as they walked toward each other on the street during lunch. In his opposition papers, Mr. Murdock notes that he found the punch "disrespectful" and responded to it with "profanity about the need to keep her hands to herself."

Mr. Murdock did not inform Ms. Diaz that Ms. Ruble struck him because of race and does not attribute race to Ms. Ruble's popping him in the head. In his opposition papers, Mr. Murdock claims that he did not report the second incident with Ms. Ruble "[g]iven the lack of response by the PDO to the first incident" but that Mr. Murdock was counseled after Ms. Ruble complained of his "language." Mr. Murdock further claims that he "advised of the precipitating conduct yet nothing was done by PDO

3

1  regarding the incident."

2      Mr. Murdock notes that in December 2002, Mr. Garza outside a courtroom "got in Murdock's

3  face, poking his index finger into his chest repeatedly and yelling at him."  Mr. Murdock notes in his

4  opposition papers that the incident "angered" him and that he left a voicemail with Ms. Diaz that "he

5  was going home."  Ms. Diaz telephoned him at home, and Mr. Murdock claims that he was "disciplined"

6  for leaving work without permission and that there was no investigation into Mr. Garza's conduct.

7      Mr. Murdock does not attribute Mr. Garza to have poked him because Mr. Murdock is black.

8  Mr. Murdock did not report to Ms. Diaz or Mr. Cajiga that Mr. Garza poked Mr. Murdock because Mr.

9  Murdock is black.

10      Ms. Diaz assured Mr. Murdock that such touching would stop and it did.

11      In his declaration, Mr. Murdock states that although he does not believe the "incidents of

12  physical conduct by co-workers . . . were racially motivated," he "came to believe the PDO's responses

13  to the incidents were racially discriminatory."[2]

14                              **Rescinded Layoff**

15      Mr. Murdock was served with a layoff notice on May 23, 2003.  A June 26, 2003 memo

16  informed Mr. Murdock that the layoff notice was rescinded "because the reason for layoff no longer

17  exists."  The County notes that since the layoff was rescinded, the layoff decision "is not actionable."

18  Mr. Murdock appears to agree in that he does not address the layoff notice.

19                      **Failure To Promote To Legal Assistant II**

20      Relying on Mr. Murdock's performance evaluations, the County notes that Mr. Murdock was

21  not entitled to a Legal Assistant II promotion in 2005 because he "was not performing his job duties at

22  a satisfactory level" and that County policy entitles an employee to advancement when the department

23  head determines that service has been satisfactory.

24                      **Failure To Hire As Defense Investigator**

25      In 2004, Mr. Murdock passed the examination for Defense Investigator I but did not score in the

26  top 30 of testing applicants.  Mr. Murdock lacks knowledge of anyone who scored lower than he did but

27

28      [2]      The County properly questions the relevancy of Mr. Murdock's "beliefs."

4

interviewed for the Defense Investigator I position in 2004.

In 2006, Mr. Murdock was one of the 145 out of 175 testers who passed the Defense Investigator I examination with a 70 percent or above score. Mr. Murdock ranked 87th of the passing testers. The top 20 highest scoring testers were interviewed. A black male was hired as a Defense Investigator I from the list of successful testers which included Mr. Murdock.

### Failure To Hire As Office Assistant Supervisor

In 2005, Mr. Murdock interviewed as one of three finalists but was not selected as an Office Assistant Supervisor. The successful candidate for the position had worked as an Office Assistant III. Mr. Murdock has never worked as an Office Assistant.

### Mr. Murdock's Performance Evaluations And Counseling

County personnel rules provide for annual performance evaluations "at approximately one month prior to the anniversary date." The County notes that between Mr. Murdock's "satisfactory" performance evaluation in 2001 to is next "satisfactory" evaluation in 2008, Mr. Murdock consistently rated as "unsatisfactory" or "needs improvement."

Ms. Diaz supervised and evaluated Mr. Murdock during 2001-2003. For the May 28, 2001 to May 27, 2002 rating period, Ms. Diaz' overall evaluation was "improvement needed." For the May 27, 2002 to May 26, 2003 rating period, Ms. Diaz' overall evaluation was "unsatisfactory." For the May 26, 2003 to September 1, 2003 rating period, Ms. Diaz' evaluation was "improvement needed." The evaluation is dated February 2004, and Mr. Murdock points out that "the evaluation did not cover the time period between September 2003 and February 2004."

On December 30, 2002, Ms. Diaz and Mr. Cajiga counseled Mr. Murdock regarding Mr. Murdock's incident with Mr. Garza. The County attributes Mr. Murdock to admit to "leaving the job without authorization on that day." Mr. Murdock criticizes a counseling memo's failure to mention Mr. Murdock's "complaints about Garza's bullying aggression."

On January 9, 2003, Ms. Diaz again counseled Mr. Murdock for unsatisfactory job performance. Her January 15, 2003 memo concluded:

> You are on notice that your work performance must improve immediately. Your courtroom organization must improve. The paperwork for which you are responsible must improve. You are not to leave the job without specific authorization. You should

5

1  confine your absences to scheduled time off which has been previously approved.

2  During September 2003 to March 2005, Mr. Cajiga, now deceased, supervised Mr. Murdock but

3  did not prepare performance evaluations for him.  During 2005-2008, former PDO Chief Defense

4  Attorney James Dockery ("Mr. Dockery"), now retired, supervised Mr. Murdock and the Misdemeanor

5  Team.  The County characterizes Mr. Murdock's work at that time as primarily "interviewing clients

6  charged with misdemeanors."

7  Mr. Murdock notes that during and for the years 2004-2005, he was not evaluated for his work,

8  received no memos or counseling regarding his job performance, and was not told by a supervisor that

9  his work was unsatisfactory.  For the rating period September 1, 2003 to May 19, 2006, Mr. Dockery's

10  overall evaluation, dated May 24, 2006, was "improvement needed."  Mr. Murdock points out that the

11  evaluation covered 32 months, the first half of which Mr. Dockery did not supervise Mr. Murdock.

12  Near the time of that evaluation, Mr. Dockery prepared a May 23, 2006 written reprimand for

13  Mr. Murdock's insubordination of Mr. Dockery to violate a County personnel rule.  The written

14  reprimand addressed Mr. Dockery's April 20, 2006 questioning of Mr. Murdock's diligence to adhere

15  to an interview schedule to which Mr. Murdock responded with anger and profanity.

16  In his declaration, Mr. Dockery states:

17  From the time I began supervising Mr. Murdock in 2005, through the completion of his
    May 2006 performance evaluation . . ., rating him overall as needing improvement, I
18  found his performance to be less than satisfactory.  During this period, I periodically, and
    informally, discussed performance issues with Mr. Murdock.  I reviewed his reports of
19  interviews with clients charged with misdemeanors, and found many to be deficient.  It
    was clear that a lack of preparation was one problem.  There were also problems with the
20  content and thoroughness of the interviews and the reports documenting them.

21  For the rating period May 19, 2006 to August 28, 2006, Mr. Dockery's overall evaluation was

22  "improvement needed."  For the rating period August 28, 2006 to August 27, 2007, Mr. Dockery's

23  overall evaluation was "satisfactory."  The evaluation was prepared April 15, 2008, after the County

24  received Mr. Murdock's DFEH charge.  Effective May 5, 2008, Mr. Murdock was promoted to Legal

25  Assistant II.

26  Mr. Dockery acknowledges that he evaluated Mr. Murdock belatedly and inconsistent with the

27  County policy of annual evaluations.  Mr. Dockery declares that during 2006-2008, he supervised 15-18

28  employees and that due to "turnover, changed assignments, transfers, etc.," he evaluated 26 individuals

6

1  each year.  Mr. Murdock claims he was the only legal assistant under Mr. Dockery's supervision.  As

2  to Mr. Murdock, Mr. Dockery declares:

3      Mr. Murdock was in no way treated differently than the other employees I supervised in
       connection with the frequency or substance of performance evaluations.  The time
4      between completion of evaluations for Mr. Murdock was not as long as for some other
       employees I evaluated.   I never took his race into consideration in preparing his
5      performance evaluations.  Mr. Murdock never said anything to me to indicate a belief
       that his race had anything to do with the content or timing of his performance
6      evaluations.

7          In his deposition, Mr. Murdock testified to the effect that he did not believe that his race affected

8  delay in his evaluations.   The County points out that Mr. Murdock never reported or suggested a

9  connection between his delayed evaluations and his race until he filed his March 25, 2008 DFEH charge.

10 In his declaration, Mr. Murdock responds that he complained to DFEH "that all of the other legal

11 assistants were promoted, which meant that all of the other legal assistants were receiving performance

12 evaluations" and that Mr. Murdock "was the only African American legal assistant which was the only

13 discernable difference between [him] and the other legal assistants."

14         The parties note that Mr. Murdock complained only to Mr. Dockery about delayed evaluations.

15 Mr. Murdock testified:

16     Q.   Is it your belief that Mr. Dockery delayed giving you your evaluation because of
            your race?
17
       A.   I began to wonder and think that.
18

19     Q.   Was there any basis for that other than the fact that there was a delay in your
            getting your evaluation?
20
       A.   I formed an opinion after I complained about getting hit.  My evals were always
21          unsatisfactory after that point.

22          . . .

23     Q.   . . . you actually got a negative evaluation before you ever complained, correct?

24     A.   Yes.

25          . . .

26     Q.   Now, you never complained to Mr. Dockery about Ms. Ruble popping you in the
            head or Mr. Garza poking you in the chest, did you?
27
       A.   No.
28

7

1          . . .

2     Q.    So is there any basis for your belief that race may have had something to do with
            the delay in your evaluations by Mr. Dockery other than the fact there was a delay
3           and you are African-American?

4     A.    No.

5                                  **Racial Comments**

6          Mr. Murdock testified in 2001 or 2002, after Mr. Murdock had been charged with domestic

7     violence against his wife, Mr. Garza "jokingly" made statements that Mr. Murdock "was the OJ Simpson

8     of Fresno because of how many Fresno police officers arrived at my home." Mr. Murdock estimates that

9     8-12 officers arrived at his home.

10         Mr. Murdock also attributes PDO paralegal Mike Lee ("Mr. Lee") to have referred to Mr.

11    Murdock as "OJ" in 2001 or 2002. Mr. Murdock further attributes Ms. Ruble to have said that "the

12    Fresno police was on you like if you was OJ Simpson."

13         The County notes that the "OJ Simpson" comments stopped when Mr. Murdock voiced that they

14    offended him.

15         Mr. Murdock was offended in 2002 when then Assistant Public Defender Mr. Cajiga referred

16    to Fresno County Superior Court Department 95 as the "black courtroom." Mr. Dockery denies hearing

17    others refer to Department 95 as the "black department."

18         Mr. Dockery declares: "Mr. Murdock never told me that he believed he was treated differently

19    than others on account of his race. He never complained of any racially offensive remarks in the

20    workplace."

21         Mr. Murdock testified that he considers current County Public Defender Kenneth Taniguchi

22    ("Mr. Taniguchi")[3] a friend and that he never reported to Mr. Taniguchi complaints, including Mr.

23    Dockery's failure to evaluate Mr. Murdock. Neither Ms. Diaz, Mr. Dockery nor Mr. Taniguchi made

24    disparaging remarks about blacks in the workplace. Mr. Murdock acknowledged that Mr. Taniguchi

25    neither took action nor withheld action to allow unlawful discrimination.

26    / / /

27

28        [3]      Mr. Taniguchi was appointed County Public Defender on August 13, 2007.

                                            8

**Mr. Murdock's Claims**

Mr. Murdock's operative Complaint for Damages ("complaint") alleges that he has witnessed "situations where African-Americans were disparaged on the basis of their race or ethnicity" and that the County "failed and refused to respond to and/or deter such conduct and/or eliminate the underlying attitudes." The complaint alleges claims, discussed in more detail below, of discrimination, retaliation and harassment under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code, §§ 12900, et seq., and 42 U.S.C. §§ 1981 ("section 1981") and 1983 ("section 1983"). The complaint seeks to recover for Mr. Murdock's "economic injury in connection with the loss of promotions, training and opportunities" and for emotional distress.

**DISCUSSION**

**Summary Judgment Standards**

The County seeks summary judgment on Mr. Murdock's FEHA and section 1981 and 1983 claims in that:

1. Mr. Murdock's claims of alleged misconduct occurred more than a year prior to his March 25, 2008 DFEH charge to render claims time barred;

2. Mr. Murdock failed to exhaust administrative remedies as to alleged misconduct unidentified in his DFEH charge;

3. No causal connection exits between alleged adverse action and Mr. Murdock's race or color;

4. Mr. Murdock's protected activity of filing the DFEH charge occurred after alleged retaliation;

5. There is no evidence of a racially hostile environment; and

6. There is not evidence to support *Monell* liability.

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and

9

1   the moving party is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c)(2); *Matsushita Elec. Indus.*

2   *v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

3   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to

4   "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."

5   *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin*

6   *Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

7        On summary judgment, a court must decide whether there is a "genuine issue as to any material

8   fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c)(2); *Covey*

9   *v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

10  398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

11  S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

12  1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

13  inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

14  summary judgment or for a directed verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

15  S.Ct. 2505 (1986)

16       The evidence of the party opposing summary judgment is to be believed and all reasonable

17  inferences that may be drawn from the facts before the court must be drawn in favor of the opposing

18  party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The

19  inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or

20  whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-

21  252, 106 S.Ct. 2505.

22       To carry its burden of production on summary judgment, a moving party "must either produce

23  evidence negating an essential element of the nonmoving party's claim or defense or show that the

24  nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

25  persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

26  Cir. 2000); *see Soremekun v. Thirfty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

27  prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

28  *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry

1  its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is

2  no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.

3  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts

4  that might affect the outcome of the suit under the governing law will properly preclude the entry of

5  summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

6       "If a moving party fails to carry its initial burden of production, the nonmoving party has no

7  obligation to produce anything, even if the nonmoving party would have the ultimate burden of

8  persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

9  "If, however, a moving party carries its burden of production, the nonmoving party must produce

10  evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

11  at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

12  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

13  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of

14  summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

15  the showing sufficient to establish the existence of an element essential to that party's case, and on

16  which that party will bear the burden of proof at trial.")

17       "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

18  the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

19  106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough

20  'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

21  *v. Loral Corp.*, 718 F.2d 897, 902 (1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253,

22  288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the

23  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

24       As discussed below, the County has presented sufficient evidence, to which Mr. Murdock fails

25  to raise a factual dispute, that Mr. Murdock's claims are time barred, unexhausted or lack supporting

26  facts.

27                          **FEHA Purposes And Prohibitions**

28       The complaint's (first) FEHA discrimination and retaliation claim alleges that the County "used

11

1    and/or allowed official policies, procedures and/or practices to discriminate against Plaintiff on the basis

2    of his color and/or race" to "constitute unlawful employment practices" to violate FEHA.

3         FEHA declares "as a public policy of this state that it is necessary to protect and safeguard the

4    right and opportunity of all persons to seek, obtain, and hold employment without discrimination or

5    abridgment on account of race . . . color . . ." Cal. Gov. Code, § 12920.  California Government Code

6    section 12940(a) deems unlawful: "For an employer, because of race . . . color . . . to refuse to hire or

7    employ the person . . . or to bar or to discharge the person from employment . . . or to discriminate

8    against the person in compensation or in terms, conditions, or privileges of employment."

9                                          **DFEH Charge Filing**

10        FEHA requires a claimant to file a DFEH charge prior to pursuing a court action.  *See* Cal. Gov.

11   Code, § 12965(b).  FEHA places a one-year limit from the time of the alleged unlawful practice to file

12   a DFEH charge.  *See* Cal. Gov. Code, § 12960(d) ("No complaint may be filed after the expiration of

13   one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred . . .")

14        The County contends that since Mr. Murdock filed his DFEH charge on March 25, 2008, conduct

15   prior to March 25, 2007 cannot serve as a basis for liability.  *Williams v. Pacific Mutual Life Ins. Co.*,

16   186 Cal.App.3d 941, 949, 231 Cal.Rptr. 234 (1986) (FEHA time provision "is a condition on a

17   substantive right rather than a procedural limitation period for commencement of an action").  The

18   County argues that Mr. Murdock is time barred to pursue "discrete" claims that:

19        1.   He was hit by Ms. Ruble and Mr. Garza in 2002;

20        2.   There was no investigation in 2002 as to his complaints against Ms. Ruble and Mr.

21             Garza:

22        3.   PDO members referred to a "black courtroom" in 2002;

23        4.   He was not interviewed for Defense Investigator in 2004 and 2006;

24        5.   He was not promoted to Legal Assistant II in 2005;

25        6.   He was not hired as Office Assistant Supervisor in 2005; and

26        7.   He was subject to "improvement needed" or "unsatisfactory" performance evaluations

27             in that his most recent April 15, 2008 evaluation was "satisfactory."

28   "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to

                                                  12

1   acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges

2   alleging that act."  *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061 (2002).

3   (analyzing discrimination claims under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§

4   2000e, et seq.)[4]  Discrete acts of discrimination include discrimination in termination, failure to promote,

5   denial of transfer, and refusal to hire.  *Ledbetter v. The Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618,

6   127 S.Ct. 2162, 2165 (2007).

7            The County further argues that Mr. Murdock's discrimination claims, except for delayed

8   performance evaluations, were "sporadic, infrequent, and resulted from the decisions of different people

9   regarding different kinds of employment practices" to avoid application of the "continuing violation

10  doctrine."  "[T]he continuing violation doctrine comes into play when an employee raises a claim based

11  on conduct that occurred in part outside the limitations period."  *Richards v. CH2M Hill, Inc.*, 26 Cal.4th

12  798, 812, 111 Cal.Rptr.2d 87 (2001).  An employer's conduct over a period of time is a continuing

13  violation "if the employer's unlawful actions are (1) sufficiently similar in kind . . ., (2) have occurred

14  with reasonable frequency; (3) and have not acquired a degree of permanence."  *Richards*, 26 Cal.4th

15  at 823, 111 Cal.Rptr.2d 87.

16           Mr. Murdock fails to address the timeliness of his DFEH charge.  This Court construes such

17  failure as Mr. Murdock's concession that claims arising prior to March 28, 2007 are time barred.  There

18  is no evidence to support survival of claims under the continuing violation doctrine.  As such, Mr.

19  Murdock's FEHA claims are limited to those pertaining to delayed performance evaluations and arising

20  after March 28, 2007.

21                              **Failure To Exhaust Administrative Remedies**

22           The County contends Mr. Murdock is limited to a race discrimination claim for failure to respond

23  to requests for performance evaluations in that Mr. Murdock's DFEH charge did not address other

24  wrongdoing he has raised in this action.

25           Fundamentally, "'where an administrative remedy is provided by statute, relief must be sought

26

27        [4]        Federal and California courts rely on federal interpretations of Title VII of the Civil Rights Act of 1964,
    42 U.S.C. §§ 2000e, et seq., to interpret analogous FEHA provisions which prohibit unlawful discrimination.  *Bradley v.*
28  *Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Clark v. Claremont Univ. Ctr. & Graduate Sch.*, 6 Cal.App.4th
    639, 662, 8 Cal.Rptr.2d 151 (1992).

1   from the administrative body and this remedy exhausted before the courts will act.'" *Okoli v. Lockheed*

2   *Technical Operations Co.*, 36 Cal.App.4th 1607, 1612, 43 Cal.Rptr.2d 57 (1995) (quoting *Abelleira v.*

3   *District Court of Appeal,* 17 Cal.2d 280, 292, 109 P.2d 942 (1941)).   "To exhaust his or her

4   administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act,

5   the claimant must specify that act in the administrative complaint, even if the complaint does specify

6   other cognizable wrongful acts." *Martin v. Lockheed Missiles & Space Co.,* 29 Cal.App.4th 1718, 1724,

7   35 Cal.Rptr.2d 181 (1994).   "[I]n the context of the Fair Employment and Housing Act," California

8   courts reiterate that "'[t]he failure to exhaust an administrative remedy is a jurisdictional, not a

9   procedural, defect.'"  *Martin,* 29 Cal.App.4th at 1724, 35 Cal.Rptr.2d 181 (quoting *Miller v. United*

10  *Airlines, Inc.,* 174 Cal.App.3d 878,  890, 220 Cal.Rptr. 684 (1985)).

11         The exhaustion doctrine serves "well-established functions" to allow the administrative agency

12  an opportunity to redress the alleged wrong without resorting to costly litigation, to reduce the scope of

13  the litigation or possibly avoid litigation, to provide a more economical and less formal forum to resolve

14  disputes, to mitigate damages, and to promote a more complete factual record.  *Williams v. Housing*

15  *Authority of City of Los Angeles*, 121 Cal.App.4th 708, 722, 17 Cal.Rptr.3d 374 (2004) (citing several

16  cases).

17         The County argues that Mr. Murdock's DFEH charge does not encompass the "expansive

18  allegations" raised in this action to restrict his claims to those "based on the untimeliness of performance

19  evaluations."  The County notes that the DFEH charge is limited to Mr. Dockery although Mr. Murdock

20  in this action makes allegations as to "numerous County employees" and discrete acts during 2001-2008.

21  The County faults retaliation claims in the DFEH charge's absence of "charge or reference to retaliatory

22  conduct."

23         Mr. Murdock fails to address the limited scope of his DFEH charge.  This Court construes such

24  failure as Mr. Murdock's concession that his claims are limited to race discrimination arising from

25  belated performance evaluations.  Indeed, the DFEH charge addresses no more than discrimination to

26  limit accordingly Mr. Murdock's claims in this action.

27                              **Burden Shifting Framework**

28         Turning from time limitations and exhaustion requirements, the County challenges the merits

1    of Mr. Murdock's claims.

2        The FEHA and section 1981 and 1983 claims at issue here are governed by the legal framework

3    applicable to alleged Title VII violations.  Elements of a section 1981 or 1983 claim in the employment

4    context are "akin" to a Title VII race discrimination claim for disparate treatment.  *See Manatt v. Bank*

5    *of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Jones v. Robinson Property Group*, 427 F.3d 987, 992

6    (5th Cir. 2005) ("analysis under both statutes are identical");  *Tagupa v. Board of Directors,* 633 F.2d

7    1309, 1312 (9th Cir. 1980) (*McDonnell Douglas*[5] criteria provide a "useful guide" to the plaintiff's

8    burden in a section 1981 or 1983 suit).

9        For FEHA and section 1981 and 1983 claims at issue here, courts apply the *McDonnell Douglas*

10   burden-shifting framework. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007); *Miller v. Fairchild*

11   *Industries, Inc.*, 797 F.2d 727, 730-731 (9th Cir. 1986) (order and allocation of proof for retaliation

12   claims follow familiar scheme announced in *McDonnell Douglas*).  "At the first step of *McDonnell*

13   *Douglas*, the plaintiff must establish a prima facie case of discrimination or retaliation." *Metoyer*, 504

14   F.3d at 931, n. 6.  "If the plaintiff makes out her prima facie case of either discrimination or retaliation,

15   the burden then 'shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

16   allegedly discriminatory [or retaliatory] conduct.'" *Metoyer*, 504 F.3d at 931, n. 6 (quoting *Vasquez v.*

17   *County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003)).

18       "Finally, at the third step of *McDonnell Douglas*, if the employer articulates a legitimate reason

19   for its action, 'the presumption of discrimination drops out of the picture, and the plaintiff may defeat

20   summary judgment by satisfying the ususal standard of proof required'" under F.R.Civ.P. 56(e)(2).

21   *Metoyer*, 504 F.3d at 931 (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir.

22   2006) (citations and internal quotation marks omitted)).  If the employer carries its burden, plaintiff must

23   have an opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the

24   employer were not its true reasons but were a pretext for discrimination. *Texas Dept. of Community*

25   *Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1981); *McDonnell Douglas*, 411 U.S. at 804; 93

26   S.Ct. 1817*; see Brundage v. Hahn*, 57 Cal.App. 4th 228, 66 Cal.Rptr.2d 830, 835 (1997).  "If a plaintiff

27

28        [5]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to decide which story is to be believed." *Washington v. Garrett*, 10 F.3d 1421, 1432-1433 (9th Cir. 1993).

Despite the burden shifting, the ultimate burden of proof remains always with the plaintiff to show that the employer intentionally discriminated because of the plaintiff's disability. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-1421 (9th Cir. 1990), *cert. denied,* 533 U.S. 950, 121 S.Ct. 2592 (2001).

As an alternative to the *McDonnell Douglas* framework, a plaintiff responding to a summary judgment motion "may simply produce direct or circumstantial evidence demonstrating that a discriminatory [or retaliatory] reason more likely than not motivated [the employer]." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation omitted). The "*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613 (1985).

"When the plaintiff offers direct evidence of discriminatory [or retaliatory] motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial. . . . it need be 'very little.'" *Goodwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir 1991)). "Direct evidence is evidence which, if believed, proves the fact [of retaliation] without inference or presumption." *Goodwin*, 150 F.3d at 1221 (citation omitted). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC.,* 413 F.3d 1090, 1095 (9th Cir. 2005).

With these evidentiary standards in mind and without discounting its above findings as to the timeliness and scope of the DFEH charge, this Court turns to the worthiness of Mr. Murdock's discrimination, retaliation and harassment claims.

### FEHA Discrimination

#### *Prima Facie Case*

The County challenges Mr. Murdock's ability to establish a FEHA discrimination prima facie

16

1    case.

2           The County is correct that Mr. Murdock pursues a disparate treatment claim that blacks were

3    treated less favorably because of race or color.  A disparate treatment theory "requires a showing that

4    the employer acted with discriminatory intent." *Jones v. Department of Corrections and Rehabilitation,*

5    152 Cal.App.4th 1367, 1379, 62 Cal.Rptr.3d 200 (2007).

6           To succeed on a disparate treatment claim, a plaintiff has an initial burden to establish a prima

7    facie case of discrimination, that is, "a set of circumstances that, if unexplained, permit an inference that

8    it is more likely than not the employer intentionally treated the employee less favorably than others on

9    prohibited grounds." *Jones,* 152 Cal.App.4th at 1379, 62 Cal.Rptr.3d 200; *see Bradley v. Harcourt,*

10   *Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (plaintiff "bears the initial burden of establishing a

11   prima facie case of discrimination by introducing evidence that gives rise to an inference of unlawful

12   discrimination").

13          For a prima facie case, a plaintiff "must generally show" that:

14          1.    He/she was a member of a protected class;

15          2.    He/she was qualified for the position he sought;

16          3.    He/she suffered an adverse employment action; and

17          4.    There were circumstances suggesting that the employer acted with a discriminatory

18                motive.

19   *Jones*, 152 Cal.App.4th at 1379, 62 Cal.Rptr.3d 200 (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317,

20   354-355, 100 Cal.Rptr.2d 352 (2000) (adopting the test applicable to federal discrimination claims in

21   accordance with *McDonnell Douglas*)).

22          "On a defense motion for summary judgment against a disparate treatment claim, the defendant

23   must show either that one of these elements cannot be established or that there were one or more

24   legitimate, nondiscriminatory reasons underlying the adverse employment action."  *Jones*, 152

25   Cal.App.4th at 1379, 62 Cal.Rptr.3d 200.

26          The County concedes that Mr. Murdock is a member of a protected class and attacks other prongs

27   of his prima facie case or failure to meet burdens.

28   / / /

***Delayed, Negative Evaluations***

The County argues an absence of evidence that delay to prepare Mr. Murdock's performance evaluation constitutes discriminatory "adverse employment action." The County further argues that "[t]here is no evidence that African-American employees were evaluated less frequently than non-African Americans." The County notes that Mr. Dockery "was late in preparing performance evaluations for a majority of those he supervised, regardless of race or color."

Mr. Murdock responds that the "slow to non-existent performance evaluations and, in particular, the 2006 evaluation which came a day after a written reprimand, demonstrate that fair employment review was for Plaintiff not the reality."

Adverse employment action requires "a materially adverse change in employment terms. *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). A "tangible employment action in most cases inflicts direct economic harm." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762, 118 S.Ct. 2257 (1998). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1179 (9th Cir. 2001); *see Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1455, 116 Cal.Rptr.2d 602 (2002).

To be "actionable," a FEHA wrong "must result in substantial adverse change in the terms and conditions of the plaintiff's employment. A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." *Akers*, 95 Cal.App.4th at 1455, 116 Cal.Rptr.2d 602. "In other words, changes in terms and conditions of employment must be both substantial and detrimental to be actionable." *Thomas v. Department of Corrections,* 77 Cal.App.4th 507, 512, 91 Cal.Rptr.2d 770 (2000).

The California Supreme Court has explained adverse action for a FEHA claim:

> Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [Government Code] section 12940, subdivision (a).

18

1    *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1054, 32 Cal.Rptr.3d 436, 455 (2005).

2         The County argues that delay itself, even in violation of County policy, does not constitute an

3    adverse employment action.  *See Jackson v. Bd. of Equalization*, 2010 U.S. Dist. LEXIS 98982, *24

4    (E.D. Cal. 2010) (delay to process discrimination complaint contrary to employer's policy was not

5    adverse action).  The County notes that Mr. Murdock's April 15, 2008 evaluation for the August 2006

6    to August 2007 time period was eight months late and "consistent with Mr. Dockery's record of

7    performance in general" in that Mr. Dockery "was late in evaluating most of the employees he

8    supervised between 2006 and 2008."  The County concludes that "a delay in providing a written

9    evaluation, where similar delays were experienced by other employees, is not actionable discrimination."

10        Citing inapplicable authority, the County contends that a negative performance evaluation is not

11   adverse action unless Mr. Murdock is able to rebut evidence that the evaluation was based on his poor

12   performance.  The County notes that the "evaluations were uniformly bad even though prepared by

13   different people over a period of years" and that Mr. Murdock lacks "evidence to show the less-than-

14   satisfactory reviews were unjustified."

15        Mr. Murdock appears to claim that delayed performance reviews prevented his ascension to

16   "satisfactory" status to qualify him for advancement to constitute an adverse action.  However, during

17   the applicable time frame since March 25, 2007, Mr. Murdock cannot point to a less than satisfactory

18   performance evaluation.  His last less than satisfactory evaluation was dated August 29, 2006, beyond

19   the year limit preceding his DFEH charge.  Moreover, Mr. Murdock offers no evidence that he was

20   qualified for advancement and acknowledged in effect in his deposition that delayed evaluations were

21   not the result of his race.  The County correctly notes the absence of evidence that of Ms. Diaz or Mr.

22   Dockery's conduct "demonstrating racial animus."  The County has demonstrated an absence of

23   evidence to support a prima facie FEHA discrimination case arising from delayed performance

24   evaluations.

25                                   ***Denied Promotions***

26        The County challenges that Mr. Murdock is able to establish a prima facie case as to denial of

27   promotions to Defense Investigator, Legal Assistant II and Office Assistant Supervisor.  Citing

28   inapplicable authority, the County holds Mr. Murdock to establish that he was "denied a promotion for

1   which he was qualified and could reasonably have expected selection." Then, apparently jumping to the

2   legitimate reason step of *McDonald Douglas,* the County argues that Mr. Murdock was not entitled to

3   promotion based on "unsatisfactory" or "needs improvement" evaluations during 2001-2006, Mr.

4   Dockery's criticism of Mr. Murdock's performance, and County policy requiring promotion only with

5   a department head's finding of satisfactory service.

6       The County continues that Mr. Murdock did not qualify for a Defense Investigator interview

7   because he did not rank in the top 30 after the 2004 written examination and ranked 87th after the 2006

8   written examination when only the top 20 highest scoring testers were invited to interview in 2006 and

9   a black tester who ranked fourth was hired.  The County further notes that Mr. Murdock was not

10  qualified for a 2006 selective recruitment for Spanish-speaking employees because he is not fluent in

11  Spanish.

12      The County notes that Mr. Murdock was unqualified as an Office Assistant Supervisor in 2005

13  in that he had never worked as an Office Assistant and that the position was awarded to a candidate who

14  had worked as an Office Assistant III.

15      Mr. Murdock does address meaningfully his denied promotions as support for a FEHA

16  discrimination claim.  The County raises valid points that Mr. Murdock's denied promotions do not

17  support FEHA discrimination.  The County has demonstrated an absence of evidence to support a prima

18  facie FEHA discrimination case arising from denied promotions.

19                          ***Hit By Coworkers***

20      Although Mr. Murdock takes issue with Ms. Ruble and Mr. Garza hitting him in 2002, the

21  County notes that Mr. Murdock does not attribute the hitting to his race to vitiate that an alleged

22  discriminatory motive.  The County has demonstrated an absence of evidence to support a prima facie

23  FEHA discrimination case arising from Mr. Murdock's incidents with Ms. Ruble and Mr. Garza.

24      In short, Mr. Murdock lacks a viable FEHA discrimination claim.

25                          **FEHA Retaliation**

26      The County challenges that Mr. Murdock is able "to show that he engaged in protected activity

27  prior to the alleged retaliatory conduct."

28      California Government Code section 12940(h) renders unlawful for an "employer, labor

1  organization, employment agency, or person to discharge, expel, or otherwise discriminate against any

2  person because the person has opposed any practices forbidden under this part or because the person has

3  filed a complaint, testified, or assisted in any proceeding under this part." California Government Code

4  section 12940(h) "incorporates other unlawful employment practices defined in other parts of section

5  12940, and forbids retaliation against anyone opposing any such unlawful employment practice." *Jones*

6  *v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1164, 72 Cal.Rptr.3d 624 (2008).

7       To make out a retaliation prima facie case, a plaintiff must demonstrate that:

8      1.     He/she engaged in protected activity;

9      2.     He/she suffered an adverse employment action; and

10      3.     There was a causal link between his/her activity and the employment decision.

11  *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Fisher v. San Pedro*

12  *Peninsula Hosp.*, 214 Cal.App.3d 590, 615, 262 Cal.Rptr. 842.

13       "To establish causation, the plaintiff must show by a preponderance of the evidence that

14  engaging in the protected activity was one of the reasons for the adverse employment decision and that

15  but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities*

16  *Division/Residential Management Branch*, __ F.Supp.2d __, 2010 WL 1293788 (N.D. Cal. 2010) (citing

17  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002)). "The causal link may be

18  established by an inference derived from circumstantial evidence, 'such as the employer's knowledge

19  that the [plaintiff] engaged in protected activities and the proximity in time between the protected action

20  and allegedly retaliatory employment decision.'" *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)

21  (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

22       The County argues that alleged misconduct arose prior to Mr. Murdock's DFEH charge to defeat

23  a causal link between his filing the DFEH charge and alleged adverse employment decisions.  The

24  County is correct, and Mr. Murdock appears to concede as much in that he points to no purported

25  retaliation for filing his DFEH charge.  In fact, effective May 5, 2008 and after the filing of his DFEH

26  charge, Mr. Murdock was promoted to Legal Assistant II.

27                      **FEHA Harassment**

28       The complaint alleges "conduct and culture . . . to create a hostile environment both within the

Public Defender as it relates to African American employees."

California Government Code section 12940(j)(1) renders unlawful "[f]or an employer . . . or any other person because of race . . . to harass an employee . . . Harassment of an employee . . . by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring."

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) (analyzing Title VII claim).

Not all workplace conduct which may be described as harassment affects a term, condition, or privilege of employment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986) (addressing sexual harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.); *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal.4th 121, 129-130, 87 Cal.Rptr.2d 132, 138 (1999), *cert. denied*, 529 U.S. 1138, 120 S.Ct. 2029 (2000). For harassment to be actionable, it must be sufficiently severe and pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings*, 477 U.S. at 67, 106 S.Ct. 2399 (citation omitted); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989). "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno v. Baird*, 18 Cal.4th 640, 646-647, 76 Cal.Rptr.2d 499 (1998).

"The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." *Fisher*, 214 Cal.App.3d at 609-610, 262 Cal.Rptr. 842. If the victim does not subjectively perceive the environment to be abusive, the conduct

1    has not actually altered the conditions of the victim's employment, and there is no actionable

2    harassment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-371 (1993).

3            "Harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show

4    a concerted pattern of harassment of a repeated, routine or a generalized nature." *Fisher*, 214

5    Cal.App.3d at 610, 262 Cal.Rptr. 842.  A plaintiff must prove more than a few isolated incidents of

6    racial enmity. *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1394 (8th Cir. 1983), *cert. denied*, 466 U.S.

7    972, 104 S.Ct. 2347 (1984); *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2nd Cir. 1986).  "When the

8    workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe

9    or pervasive to alter the conditions of the victim's employment and create an abusive working

10   environment, the law is violated."  *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 409, 27

11   Cal.Rptr.2d 457 (1994) (internal quotations and citations omitted).

12           The Ninth Circuit uses "a totality of the circumstances test to determine whether a plaintiff's

13   allegations make out a colorable claim of hostile work environment." *Brooks v. City of San Mateo*, 229

14   F.3d 917, 923 (9th Cir. 2000).  Factors considered include frequency, severity and level of interference

15   with work performance and whether discriminatory conduct is physically threatening or humiliating or

16   a mere offensive utterance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788, 118 S.Ct. 2275

17   (1998); *Brooks*, 229 F.3d at 924 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367); *Lappin v. Laidlaw*

18   *Transit, Inc.*, 179 F.Supp.2d 1111 (N.D. Cal. 2001).

19           To defeat summary judgment, a plaintiff must show there are genuine factual disputes as to (1)

20   whether a reasonable African-American would find that the conduct at issue was sufficiently severe or

21   pervasive to alter the conditions of employment and create an abusive working environment, and (2)

22   whether the employer, once apprised of the conduct at issue, failed to take adequate remedial and

23   disciplinary action. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1462-1463 (9th Cir. 1994),

24   *cert. denied*, 513 U.S. 1082, 115 S.Ct. 733 (1995); *Ellison v. Brady*, 924 F.2d 872, 879, 881-883 (9th Cir.

25   1991).

26           The Ninth Circuit applies a "reasonableness" approach to employer remedies to stop harassment:

27           We too believe that remedies should be "reasonably calculated to end the harassment."
             *Katz*, 709 F.2d at 256. An employer's remedy should persuade individual harassers to
28           discontinue unlawful conduct. We do not think that all harassment warrants dismissal,

1
2
3
4
5

*Barrett*, 726 F.2d at 427; rather, remedies should be "assessed proportionately to the seriousness of the offense." *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir.1987). Employers should impose sufficient penalties to assure a workplace free from sexual [or racial] harassment. In essence, then, we think that the reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment.  In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct.

6   *Ellison,* 924 F.2d 872, 882 (9th Cir. 1991).

7        The County identifies alleged harassment limited to the 2002 hitting of Mr. Murdock, the 2001
8   or 2002 "OJ Simpson" comments, and the 2002 "black courtroom" and "black department" comments.
9   The County points out Mr. Murdock's acknowledgment that neither Ms. Diaz, Mr. Dockery nor Mr.
10  Taniguchi made disparaging remarks about blacks in the workplace.  The County notes an absence of
11  "evidence of racially antagonistic conduct being severe or pervasive in the workplace."

12       Mr. Murdock does not address specifically the County's points.  Instead, Mr. Murdock appears
13  to base a FEHA harassment claim on the absence of blacks in the PDO, including in "leadership roles."
14  Mr. Murdock notes that the "thread of devaluing the contribution of the African American employees
15  was part of the environment that was, while subtle, continual and humiliating."  Mr. Murdock further
16  appears to base harassment on the absence of discipline for Ms. Ruble and Mr. Garza although Mr.
17  Murdock admits that race had no impact on their incidents with Mr. Murdock.

18       Mr. Murdock fails to support his points with evidence or legal authority.  Mr. Murdock points
19  to nothing to support a harassment claim based on limited numbers of a certain race in an office.  Mr.
20  Murdock provides neither evidence of "devaluing" the contribution of blacks nor legal authority that
21  such devaluing supports harassment.  The County correctly criticizes Mr. Murdock's "speculation that
22  the PDO did not consider African-American employees to be valuable."

23       As discussed above, claims as to Ms. Ruble and Mr. Garza are time barred and beyond the scope
24  of the DFEH charge.  Nonetheless, Mr. Murdock presents no evidence that incidents with Ms. Ruble and
25  Mr. Garza were more than sporadic and that the County failed to address them.  The evidence reveals
26  that Ms. Diaz assured Mr. Murdock that such incidents would stop and they did.

27       Mr. Murdock's evidence as to sporadic "black courtroom" comments is sketchy and remote in
28  time to his DFEH complaint and this action.  There is no evidence that Mr. Murdock heard such

1  reference multiple times or that he complained about the reference.

2      Mr. Murdock's waxing philosophically falls far short of actionable harassment. The record raises

3  no factual issues as to frequent, recent, severe or physically threatening harassment to further warrant

4  summary judgment for the County on the FEHA claim.

5  **County Custom Or Policy**

6      The complaint's second claim alleges that the County's "acts and omissions . . . constitute

7  unlawful employment practices" to violate section 1981. The complaint's (third) section 1983 claim

8  alleges that the County "used and/or allowed official policies, procedures and/or practices to discriminate

9  against Plaintiff on the basis of his race, in violation of the Fourteenth Amendment." The County notes

10 that it is subject to section 1981 and 1983 liability "only for its official policies or customs."

11     Section 1981 provides in pertinent part:

12         (a) Statement of equal rights

13         All persons within the jurisdiction of the United States shall have the same right
           in every State and Territory to make and enforce contracts, to sue, be parties, give
14         evidence, and to the full and equal benefit of all laws and proceedings for the security of
           persons and property as is enjoyed by white citizens, and shall be subject to like
15         punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no
           other.

16             . . .

17         (c) Protection against impairment

18         The rights protected by this section are protected against impairment by
19         nongovernmental discrimination and impairment under color of State law.

20     Section 1981 "by its broad terms, . . . proscribe[s] discrimination in the making or enforcement

21 of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273,

22 295, 96 S.Ct. 2574 (1976). Under section 1981, "discrimination based on 'ancestry or ethnic

23 characteristics' is prohibited." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th

24 Cir. 2004).

25     A local government unit may not be held liable for the acts of its employees under a respondeat

26 superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

27 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

28 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law

1  has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

2  1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

3  Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

4  result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

5  As to section 1981(c), Congress intended to "import . . . the traditional 'policy or custom

6  requirement set forth in *Monell*." *African American Contractors*, 96 F.3d at 1215.  In *African American*

7  *Contractors*, 96 F.3d at 1215, the Ninth Circuit concluded:

8  In our view, the language of § 1981(c), considered in the context of the long history of
   federal case law precluding respondeat superior liability for state actors, is conclusive
9  evidence that the amendment to 42 U.S.C. § 1981 preserves the 'policy or custom'
   requirement in suits against state actors.

10

11  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S.

12  at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation."

13  *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

14  (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its

15  employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

16  constitutional violation was the product of a policy or custom of the local governmental unit.  *City of*

17  *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

18  U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government,

19  a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

20  policymakers) and the requisite causation (the policy or custom as the "moving force" behind the

21  constitutional deprivation).  *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296

22  F.3d 531, 537 (7th Cir. 2002).

23  "Liability may attach to a municipality only where the municipality itself causes the

24  constitutional violation through 'execution of a government's policy or custom, whether made by its

25  lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' " *Ulrich v.*

26  *City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir.2002) (quoting *Monell*, 436 U.S. at 694,

27  98 S.Ct. 2018). A municipal "policy" exists when "a deliberate choice to follow a course of action is

28  made from among various alternatives by the official or officials responsible for establishing final policy

1    with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292; *Fairley v.*

2    *Luman*, 281 F.3d 913, 918 (9th Cir.) (per curiam), *cert. denied*, 537 U.S. 1044, 123 S.Ct. 659 (2002).

3          A municipal policy or custom is established by showing: (1)"a longstanding practice or custom

4    which constitutes the 'standard operating procedure' of the local government entity;" (2) "that the

5    decision-making official was, as a matter of state law, a final policymaking authority whose edicts or

6    acts may fairly be said to represent official policy in the area of decision;" or (3) "that an official with

7    final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

8    *Ulrich*, 308 F.3d at 984-85 (internal quotation marks and citations omitted).

9          Citing inapplicable authority, the County holds Mr. Murdock to "present evidence that [the]

10    County had an official custom or policy resulting in discrimination against African-Americans, the

11    creation of a racially-hostile environment or retaliation against employees opposing discriminatory

12    conduct." To negate such custom or policy, the County points to its anti-discrimination and prohibitory

13    harassment rules and policies. The County further points to Mr. Murdock's acknowledgment that Mr.

14    Taniguchi, whom the County characterizes as "the final decisionmaker," neither took action nor withheld

15    action to allow unlawful discrimination.

16          Mr. Murdock points to the County's policy of annual performance evaluations and claims that

17    "the fair and impartial rating required of the policy was not followed . . . in part because of racial bias."

18    In response, the County characterizes the evidence to show that at most Mr. Dockery's failure to adhere

19    to the County personnel rule for annual evaluations which is insufficient to satisfy a requisite custom

20    or policy.

21          In short, Mr. Murdock points to no policy to cause a constitutional violation. The County policy

22    of annual performance evaluations is not unconstitutional, and Mr. Murdock does not claim as much.

23    Mr. Murdock appears to claim failure to follow the policy is unconstitutional but provides no authority

24    for such notion. Mr. Murdock offers no evidence of racial discrimination or harassment connected to

25    a County policy or custom. In the absence of a policy or custom causing a constitutional deprivation,

26    Mr. Murdock lacks an actionable section 1981 or 1983 claim.

### Section 1981 Discrimination, Harassment And Retaliation

28          The County challenges Mr. Murdock's ability to establish section 1981 discrimination.

27

"Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case. . . . Both require proof of discriminatory treatment . . ." *Fonseca v. Sysco Food Services of Az., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). "To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (analyzing Title VII).

The County reincorporates its arguments to oppose FEHA discrimination and harassment and points to an absence of evidence of County action to create "a workplace atmosphere so discriminatory and abusive that it unreasonably interfered with Plaintiff's conditions of employment." The County characterizes Mr. Murdock's evidence as falling "far short of depicting a racially hostile environment."

Mr. Murdock argues that PDO's lack of response to his complaints, Ms. Ruble's promotion to supervisor, and the "black" courtroom comments "in the context of the PDO . . . created a distinct environment that was not friendly to the African Americans in the PDO."

As addressed above in connection with FEHA discrimination and harassment, Mr. Murdock lacks facts to support a section 1981 discrimination or harassment claim. Mr. Murdock's reliance on sporadic events up to six years prior to the filing of this action fails to sustain an actionable section 1981 claim.

Turning to retaliation, the County argues that Mr. Murdock lacks a prima facie case in the absence of adverse action since he filed he DFEH charge. "To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, (2) the [defendant] subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Hernandez v. City of Vancouver*, 277 Fed.Appx. 666, 669 (9th Cir. 2008) (internal quotes and citations omitted) (analyzing section 1981 and 1983 claims).

Perhaps recognizing the absence of a section 1981 discrimination claim, Mr. Murdock offers nothing to support such claim. As discussed above, there is no evidence that Mr. Murdock was subject

28

1  to retaliation for filing his DFEH charge or similar action.

2  **Section 1983 Discrimination**

3  The County contends that Mr. Murdock lacks facts to support a section 1983 discrimination

4  claim in that untimely performance evaluations are not adverse employment action and "there is no

5  evidence that non-African Americans received more favorable treatment in the form of annual

6  evaluations."

7  "To make out a prima facie case of disparate treatment, [a plaintiff] must show that: (1) he

8  belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse

9  employment action; and (4) similarly situated employees not in his protected class received more

10 favorable treatment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002) (analyzing Title

11 VII).

12 The County reincorporates its points to oppose FEHA and section 1981 discrimination in the

13 absence of "a factual dispute on the question of whether non-African Americans were treated more

14 favorably than [Mr. Murdock] in connection with discipline, promotions, hiring or performance

15 evaluations."

16 Mr. Murdock offers nothing meaningful to support a section 1983 discrimination claim.  There

17 is no evidence that Mr. Murdock was subjected to disparate treatment based on his race.

18 **CONCLUSION AND ORDER**

19 For the reasons discussed above, this Court:

20 1.      GRANTS the County summary judgment;

21 2.      DIRECTS the clerk to enter judgment in favor of defendant County of Fresno and against

22         plaintiff Edward Murdock and to close this action; and

23 3.      VACATES the February 7, 2011 pretrial conference and March 14, 2011 trial.

24 IT IS SO ORDERED.

25 **Dated:   November 17, 2010**            /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE
26

27

28